*Southern Division*

**NORMAND C. HUDON**

v.

**THE FIRST SAFE DEPOSIT
NATIONAL BANK OF NEW BEDFORD**

*Present:* Nash, P. J., Cox & Callan, JJ.

Case tried to *Horrocks, J.* in the Third District Court of Bristol. No. 2199.

*Cox, J.* The first of two counts is for maliciously and without probable cause causing a pilot house owned by the plaintiff and in his possession to be seized by the United States Marshal in proceedings instituted by the defendant in the United States District Court to foreclose a mortgage which it held on the fishing vessel North Star, in which proceedings the pilot house was claimed by the bank to be part of the vessel. The second count will be referred to hereafter.

The plaintiff was under contract with the owner of the vessel for the construction of a

new pilot house which he was also to install. The contract price was $4500. There was evidence that the pilot house was worth $3000.

The plaintiff had subordinated to the bank's mortgage any lien or claim which he might have against the North Star, but declined the owner's and the bank's request that the pilot house be put on the vessel, refusing to do so unless he were paid. The attorney for the bank offered the plaintiff $1500. to install the pilot house. The plaintiff demanded $2500. This was refused. At no time was the pilot house on the vessel.

On *March* 3, 1960 a vice-president of the bank under oath signed the libel to foreclose the bank's mortgage on the North Star. *The libel recited that the pilot house was part of the North Star although not on the vessel.* The libel contained a request to the United States District Court to issue process for the seizure of the vessel including the pilot house. Process issued by virtue of which the United States Marshal went to New Bedford on March 17, 1960 and seized the pilot house which the plaintiff had previously removed from his shop to the yard of his mother's home. On seeing the process which the marshal showed him, the plaintiff called his attorney but offered no interference.

After the seizure the plaintiff moved for summary judgment for the return of the pilot house to him. Before a hearing [in the federal court] on the plaintiff's motion for summary judgment, the bank filed a motion for

order of sale of the vessel and the pilot house. The bank's motion was allowed without prior notice to the plaintiff. The plaintiff filed a second identical motion for summary judgment which was denied after a contested hearing. The [federal] District Court set a date of sale. The plaintiff intervened. The court, after hearing, found that the [present] plaintiff had full title to the pilot house; that the defendant had no right to have it attached; and that the marshal had no right to hold it. It was ordered returned to the plaintiff who was awarded a nominal proctor's fee of $20.00 and a witness fee of $15.00. There was evidence that the pilot house was returned to the plaintiff in a damaged condition. The plaintiff then brought this action.

In support of Count 1 the plaintiff contends there was no compliance by the bank's attorney with Rule IX of Admiralty Rules promulgated by the Supreme Court of the United States. That rule is as follows:

"In all suits in rem against a ship and/or her appurtenances, if such appurtenances, or any of them, are in the possession or custody of any third person, the court, on due notice to such third person and after hearing, shall decree that the same be delivered into the custody of the marshal or other proper officer, if, on hearing, it appears that such action is required by law and justice."

The bank's attorney testified that he did not comply with Rule IX and did nothing

about it. The docket of the United States District Court shows that the attorney gave no notice to anyone except to the boat North Star, Inc. The plaintiff also contends in support of Count 1 that the defendant's libel under oath was false as to ownership of the pilot house. These two contentions were the gist of his requested rulings Nos. 8, 10, 11 and 13 which the judge denied. The bank's attorney is not a defendant.

The judge found for the defendant. He made special findings. He found that the defendant bank acted on advice of counsel in listing the pilot house as part of the mortgaged property and acted in good faith; that the question was not obviously clear as to whether or not the pilot house was part of the mortgaged property and that it required extensive hearings in the Federal Court to so determine. He concluded

"On these facts I find that the elements of malicious prosecution or abuse of process by the defendant are lacking and that the plaintiff is not entitled to recover for damages in this regard. At best, the defendant's conduct can be described as an honest mistake of judgment."

The judge also found

"that the plaintiff suffered no loss in value to the pilot house due to the possible negligent handling of the same while in the custody of the marshal."

We think the judge was right in finding for the defendant in Count 1 being the count

for malicious prosecution and abuse of process.

 "The action for malicious prosecution lies for abuse of civil as well as criminal process. . . . In order to prevail in such an action, the plaintiff has the burden of proving that the original action was brought maliciously and without probable cause, and has been terminated in favor of the plaintiff." *Rosenblum v. Ginis,* 297 Mass. 493, 497.

 There was evidence that would warrant a finding that the defendant's attorney acted without reasonable or probable cause in preparing for the defendant and prosecuting a libel to foreclose which included the pilot house as appurtenant to the North Star and his neglect of Rule IX would bear on the point, but, it is clear that the defendant bank acted on the advice of counsel from start to finish, and, although the advice was incorrect, the defendant acting on it in good faith is protected. *Higgins v. Pratt,* 316 Mass. 700, 710. The judge's finding that the defendant in good faith relied on the advice of counsel supports his conclusion that the defendant acted with probable cause and without malice. *Higgins v. Pratt,* 316 Mass. 700, 710. *Boylen v. Tracy,* 254 Mass. 105, 108.

The case of *Wills v. Noyes,* 12 Pick. 324, cited by the plaintiff, contains nothing in conflict with what has been said here. In that case the defendants were held liable in an action for malicious prosecution for illegally attempting, without advice of counsel, to

replevy a boat in which they had only a partial interest. At page 327, Shaw, C. J. points out that the defendants could have escaped liability by proving that they acted in good faith under advice of counsel even though such advice was incorrect. We see no reversible error relating to Count 1 and the requested rulings directed toward it, Nos. 8, 9, 10, 11, 13, 15, and 18, which the judge denied. They appear in the margin.

Count 2 is as follows:

"The Plaintiff says that on March 17, 1960, the Defendant caused a pilot house owned by the Plaintiff and in his possession to be seized and held by the United States Marshal on process in favor of the Defendant from the United States District Court for the District of Massachusetts on the sworn statement of the Vice President of the Defendant that the pilot house was part of the vessel North Star; that said sworn statement was not true; that, in addition, the Defendant did not comply with Admiralty Rule IX; that it was necessary for the Plaintiff to employ counsel, and after contested hearings, the Court ordered the return of the pilot house to the Plaintiff; that it was returned in a damaged condition and greatly depreciated in value due to negligent care and handling during the time it was under attachment; that in addition the Plaintiff was put to other expense. All to his great damage."

We think this count contains allegations which state a cause of action for the conversion of the plaintiff's pilot house. G. L. c.

231, §7 2nd. See *Wells v. Connable*, 138 Mass. 513. *Massachusetts Lub. Corp. v. Socony-Vac. Oil Co.*, 305 Mass. 269, 271. In our opinion the evidence adduced in the case required the conclusion that there was a conversion of the pilot house. There is nothing in the report to indicate any justification for regarding the pilot house as appurtenant to the North Star, and, although advice of counsel protects the bank in the count for malicious prosecution or abuse of process, that is not the case in the count for conversion where the defendant bank is bound by the actions of the person found to be its agent and attorney.

There was a wrongful taking of the plaintiff's pilot house from his possession by the defendant bank acting by its agent and attorney and that was a conversion of it. *Jackson v. Innes*, 231 Mass. 558. *Coughlin v. Ball*, 86 Mass. 334.

"It is no defence to an action for conversion that a defendant who exercised dominion over the goods did so in good faith, reasonably being mistaken in thinking the facts to be such as would give him a legal right to the goods." *Row v. Home Savings Bank*, 306 Mass. 522, 524, 525 and cases there cited.

The return of the pilot house after legal proceedings by the plaintiff to effect its return does not bar the action for conversion but operates only in mitigation of damages. *Kaley v. Shed*, 10 Met. 317, 319.

The judge found that the plaintiff suffered no loss in value to the pilot house due to the possible negligent handling of the same while in the marshal's custody. On this point there was conflicting evidence. The plaintiff testified of substantial damage.

The rule is that after the conversion of property its return and acceptance mitigates and limits damages to the difference between the value of the property when converted and the time when it is returned. *Jackson v. Innes,* 231 Mass. 558. *Collella v. Essex County Acceptance Corp.,* 288 Mass. 221, 229.

The plaintiff would be entitled to nominal damages at least for the conversion of his property, and on the record before us it would appear that a finding of more than nominal damages would be warranted. *Jackson v. Innes,* 231 Mass. 558, 560.

The plaintiff would also be entitled to recover, so far as reasonable and proper, the expense for his attorney's services in securing the redemption and recovery of his pilot house after the defendant had denied him possession of it, and such expense constituted no part of the expense of the present action for which, in legal contemplation, the taxable costs are full indemnity. *Berry v. Ingalls,* 199 Mass. 77, 80 and cases cited. It was therefore right to deny the plaintiff's request No. 21 that legal fees in the present case were part of the plaintiff's damages and to exclude evidence relating to such fees.

■ Our observations relating to conversion and damages are included as, in our opinion, justice dictates that the plaintiff should have the opportunity to present, to the trial judge, with appropriate requests for rulings, a motion for a new trial on the count for conversion and for any amendments of the declaration. This method is suggested because we do not have before us any ruling relating to conversion notwithstanding its obvious merit. The case appears to have been tried only on the theory of malicious prosecution and abuse of process. We cannot, therefore, at this stage order a new trial under G. L. c. 231, §108.

An order should be entered dismissing the report but without prejudice to the filing by the plaintiff of a motion for a new trial, before the case goes to judgment.

### PLAINTIFF'S REQUESTS FOR RULINGS OF LAW

8. Recovery for abuse of process is warranted on findings that Plaintiff's pilothouse was taken from him and kept from him by virtue of an attachment by a U. S. Deputy Marshal acting under a Federal Attachment Warrant issued on the basis of a libel which contained a false statement under oath material to the ownership of the pilothouse.

9. The fact that one Billington, a vice-president of the Defendant, routinely relied on assurances given him by counsel for the Defendant in all matters relating to ship mortgages and fore-

closures does not warrant a finding that one Croker, another vice-president of the Defendant, routinely relied on such assurances in such matters.

10. The fact that one Billington, a vice-president of the Defendant, routinely relied on assurances given him by counsel for the Defendant in all matters relating to ship mortgages and foreclosures does not permit the Defendant to escape liability for damages resulting from an attachment of the Plaintiff's property in connection with a libel filed by the Defendant in the U. S. District Court which contained a sworn statement by one Croker, a vice-president of the Defendant, as to the ownership of the pilothouse which statement was in fact not true.

11. The failure of counsel for the Defendant to comply with Admiralty Rule IX promulgated by the U. S. Supreme Court binds the Defendant.

13. A deliberate violation of Admiralty Rule IX as testified to by the Attorney for the Defendant is evidence of malice as a matter of law on the part of the Defendant.

15. If the Attorney for the Defendant knew that the pilothouse was not a part of the vessel, that it belonged to the Plaintiff and was in his possession, this knowledge is imputed to the Defendant as a matter of law and, as a reasonable person with this knowledge, the Defendant would not have probable cause to claim that the pilothouse was a part of the fishing vessel North Star.

18. The Plaintiff offered expert evidence as to the value of the pilothouse on March 17, 1960, when it was taken and on August 4, 1960, when it was returned and, as a matter of law, this evidence was uncontradicted.

Edward D. Hicks of New Bedford, for the Plaintiff.

Robert L. Genesky of New Bedford, for the Defendant.